HUGHES v. SCHOOL DISTRICT NO. 37.

1. TEACHER—SCHOOL DISTRICT—PLEADINGS—CERTIFICATE.—THE CIRCUIT COURT HAS JURISDICTION of an action by a teacher against a school district for damages for breach of contract to teach a school, and her complaint need not state that she held a certificate at time of contract.

2. NONSUIT.—Sufficient evidence here as to breach of contract to teach a school to take case to jury.

3. CONTRACT—MASTER AND SERVANT.—The doctrine that amount earned by servant during contract time should be deducted from liability of master for breach of contract, does not apply, because the earnings were after expiration of contract time.

4. FREE PUBLIC SCHOOLS.—IT IS PRESUMED that trustees of a public

school only employ teachers having certificates from an examining board.

5. TEACHER.—EVIDENCE as to conduct of a teacher while conducting a school during one term is not relative in an action for breach of contract for a subsequent term.

6. EXCEPTIONS not setting out requests refused not considered, because too general.

Before WATTS, J., Lancaster, March term, 1902.    Affirmed.

Action by Jennie C. Hughes against School District No. 37, on the following complaint:

"1. That the defendant is a body politic and corporate, duly organized under the laws of this State, under the corporate name of School District No. 37 of Lancaster County, State of South Carolina, and as such authorized and empowered to make the contract hereinafter set forth.

"2. That on or about the    day of March, 1900, the said defendant, by and through the trustees of said school district, thereunto duly authorized, contracted and agreed with this plaintiff to teach a certain free common school in said district, known as the Bruce School, for a term of five school months or for as many months as the public funds for said school would justify, commencing on the 22d day of October, 1900, and continuing thereafter, and contracted and agreed to pay the plaintiff for her services in teaching the said school $30 per month, to be due and payable at the expiration of each school month.

"3. That said contract was such as the said defendant was authorized by law to make, and that there was and is in the hands of the treasurer of the said county a sum of money as a school fund for said district more than sufficient to satisfy and discharge the amount due under said contract as herein set forth.

"4. That on or about the 22d day of October, 1900, this plaintiff entered upon the performance of the said contract in the said school building furnished by said defendant under

said contract in the said school district in the said county, and continued in the performance of the said contract until prevented from continuing and concluding the performance of the said contract as herein set forth.

"5. That at the expiration of about two months from the above stated date, after plaintiff had fully and faithfully performed her contract to teach the said school during such time of two months (being part of the said five months for which she contracted to teach as aforesaid), the said Bruce school building was, by consent and connivance of the trustees of the said school district, dismantled and rendered entirely unfit for use as a place for teaching the same under the contract aforesaid; that the plaintiff immediately reported the facts aforesaid to the school trustees of the said school district and demanded of them that said school building should forthwith be put in such condition as would enable her to complete the teaching of said school during the remainder of the term of her said contract; that said trustees failed and refused so to do, although the said school district had funds and property there available for said purpose; that this plaintiff intended and was ready and willing to complete the performance of her contract for the remainder of said term aforesaid, and did perform her part of the said contract to teach the said school during the said entire term, save only in so far as she was prevented by the acts and defaults of the defendant as aforesaid.

"6. That the term for which plaintiff contracted to teach the said school as aforesaid has long since expired; that plaintiff has fully performed all the conditions of said contract on her part, and has demanded payment from said defendant for her said services under the said contract; but that defendant has failed and refused, and still fails and refuses to pay the said plaintiff any part of the said sum of $150 due to this plaintiff for her said services under the said contract, except only that said defendant has paid to plaintiff the sum of $30 in settlement for plaintiff's services during the first month aforesaid, leaving still due by said defendant

to this plaintiff upon the said contract a balance of $120, which said defendant has refused and still refuses to pay.

"7. That there is now in the hands of the treasurer of the said county and properly applicable to the payment of the said amount due this plaintiff, a sum of money belonging to said school district more than sufficient to pay the said amount due to this plaintiff and the costs of this action.

"8. That the trustees of said school district are Simon Cauthen, Preston Horton and Simon Bruce, and the said trustees have thrown every obstruction to the progress of the school, even dismantling the school room as aforesaid, and carrying off the furniture, and have utterly refused to give the plaintiff an order on the county treasurer for the payment of the money due her, and she is now without remedy, except by bringing this action in this Court, to enforce payment of her claim.

"9. Wherefore, plaintiff prays judgment against the said defendant for the said sum of $120, and for the costs and disbursements of this action, and prays that a decree may be therefore made by this Court for the payment of the same out of the funds aforesaid; and that such other and further relief may be awarded to this plaintiff as may be just."

The Circuit Judge, after stating the allegations of the complaint in his charge, continues as follows:

"The defendants come in and deny the allegations of the complaint—that is, they deny she was employed by the trustees. They claim one employed her, the other had nothing to do with it, and the third trustee was not a trustee by reason of the fact that he didn't live in that school district; and they allege that even if she was employed, that her contract was cancelled for due and sufficient consideration by the trustees of the school; and she took an appeal from that to the county board, and the county board affirmed the action of the school trustees in cancelling this agreement; and she then gave notice of appeal to the state board, and abandoned the appeal, and the trustees, defendants, contend that she

was never employed; and secondly, if she was employed, the contract was cancelled, and cancelled legally, and that they are in no manner liable to pay for four months' wages. They have put in a further defense, that these trustees couldn't contract for any money coming into the school district except for that fiscal school year; and that there is another school in that district, and the trustees had the right to apportion the money between these two schools; and even if she is entitled to recover at all, she would be entitled to recover only the amount of money in the hands of the treasurer, appropriated and apportioned to this school. Those are substantially the issues in this case. You have heard the testimony in this case, and you are the judges of that—you are the sole judges. I charge you as matter of law, that the trustees of a school have to employ the teacher. That is part of their duty, and they can employ who they please and contract with them to teach as long as the school fund for that year holds out belonging to that school. The school trustees have a right to apportion to the different schools in their school district the public funds belonging to that school district during the fiscal year, the financial year, that they are trustees. They have a right to apportion to these schools within the district a certain amount of funds, and they have a right to employ the teacher to teach the school as long as the funds apportioned to one of those schools holds out. They are charged with the duty and power of employing a teacher; whoever the trustees appoint they have a right to enter into a contract with, and whoever they enter into a contract with has a right to teach school. Trustees have a right to discharge whoever they employ, for good and sufficient reasons. Now, I charge you that if there were three trustees in that school district, and one, Mr. Williams, wasn't a resident, I charge you, that inasmuch as they allege that Williams was not a resident and taxpayer in that school district, it is incumbent upon them to show by the preponderance of the testimony or weight of the testimony that he was not a trustee, because, if you believe that the county board

appointed him a trustee, and that he was a taxpayer and resi-
dent and qualified elector, he was a legal trustee.  I charge
you further, that even if Williams was not a resident and
taxpayer of that district, if he was appointed by the county
board and no complaint was made, and he was allowed to
hold himself out and acted as such, and the patrons of that
school district didn't make any complaint and have him re-
moved by the county board, to all intents and purposes, he
was a trustee, to the extent of being allowed to make a con-
tract along with the others.   The board of trustees have a
right to make a contract—they can call a meeting or they can
get together and agree on it.   It is not necessary, as I take it,
that they should actually designate the time and place.
They can discuss the matter on their farms, and if two agree
and they elect a teacher, that is sufficient, as I take it, in the
eye of the law.   I charge you, as matter of law, if the ma-
jority of these trustees employed the plaintiff in the case to
teach the school for five months, she was entitled to teach
that school; and if they cancelled that agreement, unless
they did it on sufficient grounds, she would be entitled to
recover the wages or pay that they agreed to give her for her
services for the five months, if she was willing and ready to
carry out her part of the contract, and was prevented by
the trustees from being allowed to do it upon any arbitrary
or capricious grounds.   If, however, there was not enough
money for that fiscal year apportioned for that school to pay
her five months' wages, if you think she is entitled to recover,
she is entitled to recover only to the extent of the fund appor-
tioned for that fiscal year.   I charge you as matter of law,
that no trustees have a right to hire a teacher in advance and
pledge the funds coming into school district for a future
year.   The law presumes that the money apportioned for a
year is to be expended in that year, and the trustees have a
right to contract for the services of teachers to the extent of
the funds coming into their hands in that year.   But they
can't create a debt and thereby make away with the funds
coming in a future year.   If you think this lady was em-

ployed to teach the school, and the school trustees arbitrarily and capriciously discharged her without any fault on her part, without any reason or anything of the sort, she would be entitled to recover, as I have told you.   If, however, after they employed her, if the school trustees for any good and sufficient reasons removed her, I charge you that was a matter within their discretion.   The government of the schools is left to them, and after he or she entered upon the discharge of their duties and if anything turns up, there is good and sufficient reason why they should not be allowed to teach the school, the school trustees have a right of removal; and if they remove her or him, her remedy or his remedy is by appeal to the county board, and if the county board sustains the action of the school trustees, the party aggrieved has a right to appeal to the state board of education, and if they sustain the county board, that ends it.   Now, understand: where a party is employed by the trustees to teach a school, the school trustees have no right to arbitrarily and capriciously annul and cancel that contract; but they have a right to do it upon good and sufficient grounds, and if complaint is made to the school trustees that the school teacher is not doing her duty, and they investigate and find good and sufficient grounds to cancel the contract, they have a right to do it, and the remedy is by appeal to the county board, and from there to the state board, if they want to go that far.   So, in this case, it is for you to determine whether there was a contract here, and if there was a contract, and the trustees removed this plaintiff without good and sufficient reasons, then she is entitled to recover.   If there was a contract and they removed her for good and sufficient reasons, then I charge you as matter of law she has not a right to recover.

"The plaintiff and defendant have both requested me to charge you propositions which I will read.   Plaintiff's propositions are as follows: * * *

" '7. That if the jury should find, on the evidence, that at the time plaintiff claims her contract to teach the school was made, Simon Bruce and John S. Williams had been recog-

nized as trustees of said school district by the school board, and up to that time had been employing the teacher and as such managing the school of said district, then, as a matter of law, they must both be regarded as trustees until they resigned or were regularly removed by the school board.' I charge you that.

"The defendants request me to charge the following propositions of law:

" '1. That a legally constituted board of trustees for any public school district in this State, except special and graded districts created by special acts, must be chosen by the county board from the qualified electors and taxpayers residing in said district; and that no contract made by an acting board of school trustees, not so constituted, can bind said district.' I refuse to charge you that, because I have already given you my idea of the law on that line. * * *

" '3. That individual school trustees in any such district have no authority to employ teachers—the whole board must be present to bind the district, unless such contract be fully approved and confirmed by a legally appointed board when legally in session.' I refuse to charge you that in that language. I charge you that one member of a board could not employ a teacher, but a majority might agree on one and have a right to employ her. * * *

" '7. That if a teacher is discharged for good and sufficient reasons by a board of public school trustees, the district in which he contracted to teach is liable to such teacher only for his stipulated wages for the time taught therein.' I refuse to charge you that. If they employ a person—if they employ a person for a certain number of months, and discharge them without any good and sufficient reason, the person that they employ is entitled to collect for the full time.

"8. I refuse to charge you the eighth proposition.

"Now, gentlemen, the form of your verdict will be, 'We find for the plaintiff so many dollars;' or, 'We find for the defendant.' Take the record."

The following is the defendant's eighth request:

"8th. That if a teacher is illegally discharged by a board of school trustees, the district in which his services were rendered is liable to him only for the wages he would have earned, if he had taught the full term allowed by law to the school assigned him, *less* the sum he did earn or could have earned in like employment during the balance of said term."

The defendant appealed on the following exceptions:

"1. Because the Circuit Judge erred in overruling defendant's oral demurrer to the jurisdiction of the Court; whereas, it is submitted, he should have held that the Court was without jurisdiction of the subject matter of the action—it not appearing from the complaint that the plaintiff had exhausted her right of appeal to the county and state boards of education, before the commencement of this action, as contemplated by the statute law of this State; and that, therefore, he should have dismissed the complaint.

"2. Because the Circuit Judge erred in overruling defendant's oral demurrer, and in holding the same sufficient; whereas, it is submitted, he should have held the complaint fatally defective in that it contained no allegations: (a) That the plaintiff had and held a certificate of qualification from the state board or county board of education, and was, therefore, duly qualified to teach in the public schools in the State; and (b) That plaintiff had exhausted her right of appeal to the county and state boards of education, before the commencement of this action; and (c) That plaintiff had made an effort to secure, or had failed to secure, other like employment during the balance of her alleged contract, and the amount of her earnings, if she obtained employment. And, therefore, his Honor should have dismissed the complaint.

"3. Because his Honor erred in holding that it made no difference where plaintiff's patronage came from—whether from the defendant district or from any other adjoining district; whereas, it is submitted that, under the school law of

the State, the patronage from the district in which the teacher is employed, is *alone* to be considered by the trustees in the maintenance of the public schools; and, therefore, the Court erred in refusing to allow defendant to introduce testimony tending to show that the plaintiff's patronage was almost entirely from other adjoining school districts.

"4. Because his Honor erred in allowing the plaintiff, over the objection of the defendant, to testify in reply, that she had not been cruel to the daughter of the witness, Johnson, during the previous term; whereas, such testimony was not in reply—the Court having previously refused to allow the said Johnson to testify as to plaintiff's treatment of his daughter during that previous term.

"5. Because his Honor erred in refusing to allow the defendant to prove by the plaintiff in her cross-examination the amount of wages earned by plaintiff while teaching in Chesterfield County, and in holding that what she earned in Chesterfield had no bearing on the case at bar; whereas, it is submitted, he should have allowed this testimony—since plaintiff's measure of damages, if she was entitled to any, was the difference between what she would have earned, had she been allowed to teach out the term of her alleged contract, less what she earned or might have earned in like employment during the months of her discharge.

"6. Because his Honor erred in not granting defendant's motion for a nonsuit, and in holding that there had been some evidence adduced by plaintiff, that J. S. Williams was a legally appointed member of the board of trustees of the defendant district; whereas, it is submitted, he should have granted the motion, there being absolutely no testimony that the said J. S. Williams had ever been appointed a trustee of the defendant district by the county board of education, and it having been established by the cross-examination of plaintiff and her witnesses, that the said J. S. Williams was not a resident of the said district, as required by the Constitution and the school law of this State.

"7. Because his Honor erred in refusing to allow the de-

fendant to introduce any testimony tending to show the peculiarities of temperament, the unfairness and the cruelty of the plaintiff—as shown in the management of the Bruce school during the previous term; whereas, it is submitted, such testimony would have been both relevant and competent—as tending to show a sufficient reason on the part of the parents in the district for not patronizing the plaintiff in the fall of 1900, in justification of the action of the board of trustees in discharging plaintiff; and in justification of the action of county board in recommending her discharge.

"8. Because his Honor, the presiding Judge, erred in refusing to charge the jury defendant's first request to charge, as submitted.

"9. Because his Honor, the presiding Judge, erred in refusing to charge the jury defendant's third request to charge, as submitted.

"10. Because his Honor, the presiding Judge, erred in refusing to charge the jury defendant's seventh request to charge, as submitted.

"11. Because his Honor, the presiding Judge, erred in refusing to charge the jury defendant's eighth request to charge, as submitted.

"12. Because the verdict of the jury was contrary to law and not warranted by the evidence adduced—there being no competent evidence that plaintiff had and held a certificate of qualification, as required by law, from either the county board or state board of education; and there being absolutely no evidence that J. S. Williams who, as plaintiff says, employed her to teach the Bruce school, was appointed a trustee of the defendant district by the county board; and it appearing, on the other hand from the testimony of all the witnesses, that the said J. S. Williams was not a 'qualified elector residing' in the defendant district.

"13. Because his Honor, the presiding Judge. charged the jury, in speaking of the duties and powers of trustees, as follows: 'They can employ *who they please,* and contract with them to teach as long as the school fund for that year holds

out belonging to that school;' whereas, it is submitted, such is not the school law of this State, for under the law trustees are prohibited from employing any teacher who does not hold and present to the board a certificate of qualification (in force) from the county or state board of education.

"14. Because his Honor, the presiding Judge, charged the jury as follows: 'Whoever the trustees appoint, they have a right to enter into a contract with, and whoever they enter into a contract with, has a right to teach school;' whereas, it it submitted that under the law of this State. a teacher who does not hold a certificate of qualification (in force) from the county board or state board of education, has no right to teach a public school, and a contract made with her by a board of trustees cannot bind the district.

"15. Because his Honor, the presiding Judge, charged the jury as follows: 'And if they cancelled that agreement, unless they did it on sufficient grounds, she would be entitled to recover the wages or pay that they agreed to give her for her services for the five months;' whereas, it is submitted, a plaintiff, could in no event recover more than the wages promised her, less the amount of wages she earned, or could have earned, in Chesterfield County or elsewhere, during the balance of the term of her alleged contract.

"16. Bcause his Honor erred in charging the jury plaintiff's seventh request to charge, as submitted; whereas, it is submitted, no recognition by the county board of the acts of persons, and no acts of persons themselves (who have never been regularly appointed trustees by the county board, and who are not 'qualified electors residing in the district'), can give to such persons authority to make a contract like the one in question to bind the district, in opposition to the plain and positive provisions of the Constitution and the statute law of this State."

*Messrs. Green & Hines,* for appellant, cite: *As to want of jurisdiction in Circuit Court:* Chap. 24, title 9, part I., Code, 1902; art. XI., Con.; 52 S. C., 201. *Complaint should have*

*alleged that she had a certificate:* Code, 1902, 1200; 21 Ency., 754. *Measure of damages is salary less earnings:* 21 Ency., 757; 15 Col., 367; 26 W. N. C., 495; 31 Ill. App., 537; 15 Mo. App., 352; 15 Ency., 793, 795; 14 Ency., 793-5; 5 Rich., 465; 4 McC., 246. *Contract must be made with majority of board of trustees lawfully appointed:* Con., art. XI., sec. 6; Code, 1902, 1210, 1212; 8 At. R., 443; 107 Ind., 43; 21 Ency., 755; 126 Ind., 528; 8 Ind., 504; 22 Ohio St., 144; 47 Mich., 626.

*Messrs. Ernest Moore* and *R. E. & R. B. Allison,* contra, cite: *As to the jurisdiction of the Court:* 22 St., 150, 173; Code, 1902, 1205, 1241; 13 S. C., 441; 29 S. C., 325; 54 S. C., 265; Con., art. I., sec. 25; art. V., sec. 15. *If error in admitting evidence, it was harmless error:* 51 S. C., 480; 55 S. C., 480; 50 S. C., 129; 54 S. C., 288, 314. *Proof that defendants were de facto trustees is sufficient:* 35 S. C., 192; 14 ed. Green on Ev., secs. 83, 92; 64 S. C., 445; 59 P., 885. *Exception not embodying request refused is too general:* 61 S. C., 571; 46 S. C., 372; 51 S. C., 55; 48 S. C., 430; 12 Rich. L., 129. *Presumption is that trustees employed a teacher having a certificate:* 45 S. C., 136; 46 S. C., 43, 372. *Contract by majority of trustees is good:* 59 S. W., 959.

May 15, 1903. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. Plaintiff brought her action to recover from the defendant $120, under a contract with a majority of the board of trustees of School District No. 37 of Lancaster County, in this State, by which she was employed to teach the Bruce School, in said School District No. 37, for five months, beginning on 22d October, 1900, at the price of $30 per month. The trial was had before his Honor, Judge Watts, and a jury. A verdict of $90 was rendered in favor of the plaintiff. After entry of judgment on such verdict, the defendant appealed to this Court, alleging that the Circuit Judge erred, first, in overruling the de-

murrer of the defendant; second, in overruling defendant's motion for a nonsuit; and third, for alleged errors of law in the charge of the Circuit Judge. The report of the case will set forth the complaint.

1. We cannot find any error in the refusal to sustain the demurrer. The allegations are sufficient to sustain a cause of action as set out in the complaint. Certainly the Court of Common Pleas has jurisdiction of the case set out in the complaint. Nor do we think the Circuit Judge erred in sustaining the proposition that the complaint did set out a cause of action. We do not think it was incumbent upon the plaintiff to plead that she possessed a certificate as a teacher; it would be assumed that the board of trustees for the school district in question, when they made a contract with the plaintiff to teach a school, complied with the law. Further, when she was paid her salary for one month, it was not only required that the board of trustees signed the warrant therefor, but also that the county superintendent indorse the same by his approval. All these facts are amongst the facts alleged in the complaint. These exceptions are overruled.

2. We have examined the testimony to see if there was any material evidence to take the cause to the jury. We find there was. Hence the Circuit Judge was not in error in refusing the motion for a nonsuit.

The fifth and fifteenth exceptions complain of error in excluding testimony of plaintiff on cross-examination as to the amount she earned teaching school in Chesterfield County from the 25th day of February to the 26th day of April, 1901, and in charging the jury that plaintiff would be entitled to recover whatever salary the district trustees agreed to pay her for the stipulated term, without qualifying the charge with a statement that her earnings during the term should be deducted. These exceptions, in our opinion, do not present grounds sufficient to warrant reversal under the undisputed facts in this case. The undisputed facts show that the plaintiff's earnings in

Chesterfield were not during the term for which she was employed. The complaint alleged that the term of employment commenced on the 22d day of October, 1900, and was to continue thereafter for a term of five *school* months *or for as many months as the public funds of said school would justify* (italics ours). A school month is four weeks or twenty teaching days. The testimony of the plaintiff was that there were four and one-half school months from the 22d day of October, 1900, to February 25th, 1901, when she began to teach in Chesterfield. This would be true, if no allowance is to be made for the usual Christmas week holiday; but with such allowance there was time between the dates named for a term of seventeen weeks or four and a quarter months. To prove the exact term of employment according to the allegations of the complaint, plaintiff introduced evidence as to the school funds belonging to the school for that scholastic year, and showed by the county treasurer that the funds were $163.31, plus dispensary funds $29.24, less $65, leaving $127.55, of which the plaintiff had received $30 for one month's salary, leaving less than $100 of funds applicable. Mr. J. S. Bruce, one of the trustees, testified that plaintiff was employed to teach school *"for four or five months, owing to the amount of money there was to run the school."* The plaintiff sued for $120, as for four months at $30 per month, having been paid for one month of the term; but the jury, under the testimony, found for the plaintiff only $90, thereby determining that the term of employment was *four* school months, from October 22d, 1900. It is, therefore, manifest that plaintiff's earnings after the 25th of February, 1901, had nothing whatever to do with the case, and that the trial Judge committed no error in excluding evidence thereof, and in failing to qualify his charge in the respect complained of, even if there had been a request for such qualification, and there was no such request.

The thirteenth and fourteenth exceptions assign error in charging generally that the trustees could contract with whom they pleased, to teach as long as the school funds for

that year belonging to that school district hold out.

4      There was no error in this charge, viewed in the concrete, with reference to the case made by the evidence.    The error imputed is a technical one, viewing the charge as an abstract proposition and without reference to the particular case.    The statute requires school trustees to employ teachers from those having certificates from the county board of examiners.    But there was not a particle of evidence that plaintiff had no such certificate.    On the contrary, the presumption was that she had such certificate, from the fact of employment by officers presumed to do their duty.    Besides, the only evidence on the subject was that plaintiff had such certificate, as appears by reference to folios 60 and 95 of the "Case."    Under the case made, the Judge could have properly charged the jury *that the school trustees had the right to employ plaintiff;* and if such charge could have been made, surely it was not prejudicial to defendant to charge that the trustees could contract with whomsoever they pleased, a general statement involving the right to contract with the plaintiff.

Recurring to the first exception, relating to the jurisdiction of the Court, appellant's interesting argument upon this point is as follows:

"Our position is, that under the free school law of this State (chapter 24, title 9, of part I., of Civil Code, 1902, and article II., of the Constitution, 1895), plaintiff had furnished to her an opportunity and a remedy for her alleged

1      grievance, to submit her alleged claim to a tribunal or tribunals, other than the Circuit Court—tribunals with all the power of that Court to summon witnesses, to take testimony, and to render a judgment that would have bound defendant district and given plaintiff the relief sought by her, if she were entitled to it.    That until she exhausted this, her plain remedy in the manner required by law, and that fact had been made to appear upon the face of her complaint, the Circuit Court should take no jurisdiction either of the person of the defendant or of the subject matter of the

action.    Under section 2, of article II., of the Constitution of this State, the state board of education is given 'such powers and duties as may be determined by law.'    Under section 3 of the same article, the General Assembly is given the power to define the *'qualifications, powers and duties'* of the county board of education and of the board of school trustees (italics ours).    Section 1203 of the Code constitutes the county board 'a tribunal for determining *any matter* of local controversy or *administration* of the school laws, with power to summon witnesses and take testimony, if necessary, and when they have made a decision, it shall be *binding* upon the parties to the controversy' (italics ours), provided no appeal be taken to the state board in the manner therein provided.    Sections 1206 and 1211 and 1218 give the county board the supervision of the actions and doings of the board of trustees—so construed in *State ex rel. Bryson* v. *Daniel,* 52 S. C., 201, 29 S. E., 633.    Under section 1183 of the Code, the state board is given the power 'to review on appeal all decisions of the county board of education * * *,' and in so reviewing to pass upon all *'questions of law,* as well as the facts of the case' * * * 'And the decision of the state board shall be *final* upon the matter at issue' (italics ours).    *State ex rel. Bryson* v. *Daniel, supra.* If, as a matter of fact, plaintiff had appealed from the action of the board of trustees, in discharging her and refusing to pay her, to the county board, and from the latter to the state board, and that appeal were pending before the last named board, at the time of the commencement of this action in the Circuit Court, the Court certainly would not assume jurisdiction in the matter.

    "So that when the complaint in this action failed to show upon its face that the plaintiff had exhausted the powers of the Constitution and statutory quasi inferior court—a court constituted for the express purpose of adjudicating her rights in the premises—the Circuit Court could not and should not have assumed jurisdiction of the person of the defendant and of the subject matter of the action, and, there-

fore, defendant's first ground of demurrer should have been sustained and the complaint dismissed for want of jurisdiction."

The case before us, however, is not a "matter of local controversy in reference to the construction or administration of school laws," and does not come within the rules stated in *State* v. *Heirs,* 51 S. C., 388, 29 S. E., 89, and *State* v. *Daniel,* 52 S. C., 201, 29 S. E., 633. This case is for damages for breach of contract. Sec. 1205, Code, 1902, provides that organized school districts "may sue and be sued and be capable of contracting and being contracted with to the extent of their school fund." And by sec. 15, art. V., Courts of Common Pleas have jurisdiction "in all civil cases." We have thus overruled the first and second exceptions.

The third is immaterial in this controversy and is, therefore, an abstract proposition.

We overrule the fourth exception, for it would make no difference to the plaintiff's case what may have occurred prior to the contract sued on; if it had any force before the contract to teach was made, it had none after the contract was made; and thus for the same reason we overrule the seventh exception.

We have already overruled the sixth exception.

The eighth, ninth, tenth and eleventh exceptions cannot be considered, because they do not set out in terms the requests which were refused.

The twelfth exception cannot be sustained under the testimony in this cause, and further because two exceptions are attempted to be blended in one.

The sixteenth exception must be declined to be entertained for the reason that when a request to charge is made the basis for an exception, such request to charge must be embodied in the exception.

The charge of the Circuit Judge and the exceptions must be embodied in the report of this appeal.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.