15329

PATRICK v. MAYBANK *ET AL.*

(17 S. E. (2d), 530)

*Mr. T. K. McDonald,* and *Messrs. Douglas & Douglas,* all of Winnsboro, for petitioners,

*Mr. John M. Daniel, Attorney General, Messrs. M. J. Hough* and *T. C. Callison, Assistant Attorneys General, Messrs. Hemphill & Hemphill,* of Chester, and *Mr. H. N. Obear,* of Winnsboro, for respondents.

November 17, 1941.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE L. D. LIDE.

By an act approved April 5, 1930, (Acts 1930, No. 977, 36 St. at Large, page 1757), the General Assembly provided that five certain school districts in Fairfield County, including White Oak School District No. 3, should be consolidated into one school district "to be known as Blackstock School District No. 34, Fairfield County, South Carolina." And it appears that some time in the year 1936 a request by certain interested persons was made of the County Board of Education of Fairfield County for the withdrawal from this consolidation of the former White Oak School District, but the County Board refused the request, whereupon an appeal was taken to the State Board of Education, which on January 8, 1937, affirmed the action of the County Board; and that effort to dissolve the consolidation ended. But at a meeting of the County Board which was held on or about

June 28, 1940, the following action was taken as shown by the minutes of the Board: "The petition by certain residents of School District No. 3 (White Oak) that they be permitted to withdraw from affiliation with Blackstock School District No. 34 was taken up. On motion it was decided to grant the request, and that beginning with the school year 1940, White Oak School District No. 3 should return to the status it occupied previous to its affiliation with Blackstock."

Thereupon an appeal was taken in behalf of certain citizens, residents, taxpayers and school patrons to the State Board of Education from the aforesaid action of the County Board of Education, and the notice of appeal was filed with the State Board on or about July 26, 1940. This appeal among other things questions the jurisdiction of the County Board to dissolve or disrupt the Blackstock School District which had been consolidated pursuant to the Act of the General Assembly above referred to; and one of the grounds of the appeal alleges that the County Board had no right or jurisdiction to re-establish the former White Oak School District No. 3 without having before it any petition "such as is required by law."

This appeal first came on to be heard before the State Board of Education on September 17, 1940, when the following action was taken by the State Board, as recorded in the minutes:

"This appeal from the decision of the Fairfield County Board of Education was based on the action of the County Board of Education of Fairfield County releasing White Oak School District from their consolidation with Blackstock School District. The consolidation was effected by legislative enactment and not by the county board of education. These people asked for a release from the decision of the county board of education.

"Mr. Hemphill, representing two-thirds of the people of what used to be White Oak District, stated that these people had heard nothing of a petition having been circulated and had no opportunity to appear before the County Board of

Education. He asked that in order to get the action of the County Board of Education in proper shape, that the State Board reverse the findings of the County Board, so that all parties can be heard.

"Mr. Easterling moved that the case be remanded to the County Board of Education in order that written testimony be taken and the case brought to the State Board of Education; further, that the two attorneys present, together with Mr. Hope confer with the Attorney General as to the legality of the Board taking such action, and the drawing up of proper papers. Under no circumstances shall the case be reversed unless there is no other way out, according to the Attorney General."

It appears, nevertheless, that the status of the matter remained unchanged until August 5, 1941, on which date a meeting of the State Board was held and there was then presented to that Board "as and for the purported petition" on which the County Board "was purported to have acted on June 28, 1940," an unsigned instrument in the form of a carefully prepared petition that the former White Oak School District No. 3 be permitted to withdraw from Blackstock School District No. 34, which evidently contemplated the signatures of qualified electors of the territory involved, but there were no signatures whatever. There was, however, also filed on that day with the State Board a letter dated at White Oak, S. C., August 25, 1939, addressed to Mr. W. W. Turner, who was the County Superintendent of Education, and signed by thirteen persons. The signers do not describe themselves as electors or otherwise, nor do they state in specific terms the purpose of the letter, but they say: "We want out of the consolidation," and they refer to a request made of the County Board "some days ago." There was also filed with the State Board at the same time a petition addressed to the County Board by a number of persons recited to be citizens, residents, electors and parents of children of former White Oak School District No. 3, requesting the County Board not to disturb the consolidation, stat-

ing that they preferred that the school children attend Blackstock School. But this petition was dated October 11, 1940, and was of course subsequent to the action of the County Board taken at their meeting held on June 28, 1940.

At the meeting of the State Board of Education which was held on August 5, 1941, the record shows that the following action was taken:

"After a lengthy ·discussion of the matter by both sides of the case, and after due consideration, the State Board of Education reversed the action of the Fairfield County Board of Education. The Board took the position in this matter that the District was set up by legislative enactment; therefore the State Board of Education, which is an appellate body, has no jurisdiction in the matter, and the District will have to be dissolved in the same manner in which it was set up.

"The joint high school district between Fairfield and Chester Counties will have to be dissolved by joint action of the county boards of education of Chester and Fairfield Counties."

The petitioners above named thereafter presented to Honorable Taylor H. Stukes, one of the Associate Justices of this Court, a petition setting forth among other things the action of the State Board at their meeting held August 5, 1941, and alleging that the judgment and decision of the State Board is void and erroneous for certain reasons therein specified and praying that a writ of *certiorari* be issued commanding the board to certify the record in the proceedings to this Court, and that the alleged judgment and decision be reversed and set aside. On this petition a writ of *certiorari* was issued by Mr. Justice Stukes, dated September 1, 1941, returnable in due time, so that the cause might be argued at the October term, 1941; whereupon the State Board of Education made its return to the writ, setting forth among other things in substance the facts above stated and the records above referred to. And in this return it is averred on information and belief that there never was be-

fore the County Board of Education of Fairfield County "on June 28, 1940, any legal petition signed by at least one-third of the qualified electors so that said County Board was without any jurisdiction or right to pass any such resolution as the minutes thereof show as aforesaid."

There was also a supplemental return made to the writ by the State Board wherein is set forth a report signed by the County Board of Education to the effect that during the summer of 1939, there was presented to the County Board a petition "praying, in substance, that School District No. 3 of Fairfield County be re-established as a common school district of said County." This report further states that the petition was finally heard by the County Board on or about June 27, 1940, at a meeting at which all members were present, and that at this meeting "it was determined that said petition was signed by more than one-third of the qualified electors embraced within the limits of the proposed School District." (This is, of course, the same meeting referred to elsewhere in the record as having been held on June 28, 1940.) But no copy of the petition was furnished and the names of the qualified electors alleged to have signed it were not given.

This report of the County Board, moreover, appears not even to have been before the State Board at the meeting which was held on August 5, 1941, for the State Superintendent of Education stated in his affidavit accompanying the supplemental return that he had no recollection whatever of this report having been read or presented to the State Board on August 5, 1941, and he avers that he "is reliably informed and believes that same was left by some party, unknown, on his desk and found after the adjournment of said August 5, 1941, meeting."

The attorneys for the petitioners state in their brief that the questions involved for our review are whether the General Assembly by special Act had the power to combine five school districts in Fairfield County into a school district having an area in excess of 49 square miles; and whether

the County Board under Section 5350, Code 1932, had the authority to create an additional school district from territory embraced in a school district created by a special Act.

It is admitted that the consolidated district referred to in the Act of 1930 as Blackstone School District contains an area considerably in excess of 49 square miles, and it is argued that the Act of 1930 being a special Act is unconstitutional (as in violation of Article III, Section 34, subdivision 4) and that although the constitutional limitations as to area were amended so as not to apply to Fairfield County, the same limitations are contained in Section 5350, Code 1932, which is the applicable general law. That section also provides that no new school district shall be created by the County Board "except upon the petition of at least one-third of the qualified electors embraced within the limits of such proposed school district." But counsel for petitioners contend that the report of the County Board to the State Board shows that there was before it such a petition as that required by this section. Hence briefly stated the argument is that the original consolidation was in violation of the Constitution and so invalid, but that even if its validity were conceded, the County Board restored or recreated White Oak School District No. 3 upon a legal petition duly signed, pursuant to Section 5350, and that the action of the County Board should therefore be affirmed. Counsel for the petitioners also say that the ruling of the State Board with reference to the high school district which extends into Chester County is wholly irrelevant because this was not the question before the State Board, no action having been taken by the County Board affecting the high school district, since the school district sought to be created or recreated was a common school district. On the other hand, counsel for respondents deny these conclusions of law and the alleged factual basis thereof.

Our conclusion, however, is that none of these interesting questions relating to the merits of the controversy are before us for determination, for the rea-

son that we are of opinion that the State Board had no jurisdiction to pass upon the purported appeal from the action of the County Board. It is true that this question of jurisdiction was not raised or suggested by counsel for any of the parties, but one of the most important functions of a writ of *certiorari* is to determine whether the lower Court or tribunal acted within its jurisdiction, and hence want of jurisdiction appearing on the face of the record may be taken notice of by this Court *sua sponte*. *Goggans v. State Board of Education,* 133 S. C., 183; 130 S. E., 645.

The appellate jurisdiction of the State Board of Education is dependent upon the provisions of Sections 5288 and 5348, Code 1932. The former section, 5288, provides that the State Board "shall have power to review on appeal all decisions of the county boards of education, as hereinafter provided for"; while the latter section, 5348, provides that the County Board of Education shall be "a tribunal for determining any matter of local controversy in reference to the construction or administration of the school laws," and that either party to such a controversy "shall have the right to appeal to the State Board of Education." While the terms of Section 5288 are rather broad they must of course be construed in connection with the provisions of Section 5348, from which it clearly appears that the appellate jurisdiction of the State Board of Education was intended to be limited to matters of local controversy. This view is further strongly fortified by the fact that these two sections were originally enacted as parts of a single statute to wit, an Act approved March 9, 1896, Acts 1896, 22 St. at Large, page 150. Does then the right to appeal to the State Board of Education apply to the creation of a school district, or the consolidation of school districts, under Section 5350? We do not think so, unless such action of the County Board could reasonably be deemed a matter of local controversy.

In the case of *School District No. 60 of Williamsburg County v. Montgomery,* 150 S. C., 391, 148 S. E., 218, 219,

the plaintiffs (appellants) by their complaint sought to prevent the creation by the County Board of Education of a certain proposed school district in Williamsburg County, involving the consolidation of four former districts. The petition to the County Board was signed by more than one-third of the qualified electors of the entire territory, but not by as many as one-third of the qualified electors of one of the districts in the consolidation, to wit, No. 60, and the Supreme Court held that under the terms of the act (Section 2599, Code 1922, Section 5350, Code 1932) the petition was insufficient since it was necessary to have the signatures of at least one-third of the qualified electors of each district proposed to be consolidated. The action was brought in the Court of Common Pleas for Williamsburg County, and it was earnestly contended by the defendants (respondents) that the Court could not give the relief sought because the law required the parties in interest to appeal from the County Board of Education to the State Board of Education, but this Court speaking through Mr. Justice Blease said:

"We do not think, however, that this case is controlled by the *Windham case, (State ex rel. Windham v. Dick,* 134 S. C., 46, 131 S. E., 772, holding that the disputed election of a teacher was a matter of local controversy). The situation here is altogether different. The matter of completely dissolving school district No. 60 is not one of mere 'local controversy.' The rights of taxpayers of school district No. 60 are involved. Perhaps creditors, especially bondholders, have claims against that school district. This class of persons might have claims against a school district.

"Nor is this case like that of *McCollum v. Crosby,* 114 S. C., 169, 103 S. E., 514, also cited by the respondents, where it was held that the location of a school building is an administrative matter within the discretion and judgment of the school trustees, subject to the appellate and supervisory power of the county and state boards of education.

"As indicated, the county board of education sought here to destroy the very corporate existence of school district No. 60. That is much more than a matter of 'local controversy,' and any interested person who might suffer injury thereby had the right, in our opinion, to seek relief from such threatened injury in our Courts."

So far as we have been able to find this case is the only óne involving the direct question, and there have been no later decisions touching on the point. This decision is therefore binding upon us under the rule of *stare decisis;* but we do not rest our conclusion on that doctrine alone. For we are thoroughly convinced that the matter of creating (or re-creating) a new school district which here involves the destruction of what purports to have been a large consolidated school district and may require the determination of serious constitutional questions, is by no means a local controversy. A school district is a body politic and corporate under the laws of this State and constitutes one of our most important political subdivisions, having the right to sue and be sued, and is capable of contracting and being contracted with to the extent of its school fund, and may hold both real and personal property. And while the record before us does not refer to any bonded or other indebtedness, school districts are given the power upon certain conditions to issue bonds, and incidental to their public functions incur obligations affecting all taxpayers of the district, whether residents or not, all of which goes to show that parties might be vitally affected by the creation or destruction of a school district although not resident within its area.

As indicated in the quoted excerpt from the opinion of 'Judge Blease, this is certainly much more than a matter of local controversy, and we do not think such a matter was intended by the General Assembly to be regarded as a local controversy which might be appealed to the State Board of Education, a body well equipped indeed to deal with school matters of local character, but not to re-

view proceedings of this kind involving constitutional questions and perhaps affecting property rights. It is therefore our opinion that the State Board of Education was without jurisdiction to entertain the appeal made to it from the County Board, and hence that the action of the State Board is without force or effect. Consequently the proceedings before the State Board should be vacated, without prejudice, however, to the rights of any party or person in interest to institute an action in a Court of competent jurisdiction to determine the questions involved in the controversy.

(The motion made in this Court by certain school trustees alleged to be interested, for permission to intervene in this proceeding, need not be considered in view of our holding that the State Board was without jurisdiction of the attempted appeal.)

The proceedings before the State Board of Education are therefore vacated, and the order thereof reversed, for want of jurisdiction of the purported appeal, but without prejudice to the determination of the matters in controversy by any Court of competent jurisdiction.

MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE and STUKES and MR. ACTING ASSOCIATE JUSTICE A. L. GASTON concur.